JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Richard Haan, individually and on behalf of All Others Similarly Situated

## DEFENDANTS
Five Below, inc., David schlessinger, Thomas G. Vellios, Joel D. Anderson and Kenneth R. Bull

**(b)** County of Residence of First Listed Plaintiff  Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Law Offices Bernard M. Gross, P.C.
Wanamaker Building, Suite 450
100 Penn Square East
Philadelphia, PA 19107

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☒ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
10b and 20a of the Exchange Act
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ in excess of $200,000   CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
01/09/2015

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Richard Haan, individually and on behalf of all others similarly situated, Plaintiff

:
:
:
:
:
:
:

CIVIL ACTION

v.

Five Below Inc., David Schlessing, Tom Vellios, Joel D. Anderson and Kenneth R. Bull

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                    ( ✓ )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( )

| 1/09/15 | _Deborah R. Gross_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-561-3600 | 215-561-3000 | debbie@bernardmgross.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: c/o Law Offices Bernard M. Gross, P.C., 100 Penn Square East, Suite 450, Philadelphia, PA 19107

Address of Defendant: 1818 Market St., Philadelphia, PA 19103

Place of Accident, Incident or Transaction: Phila, PA

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes☐  No☑

Does this case involve multidistrict litigation possibilities?  Yes☐  No☑
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☑ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability ---- Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Deborah R. Gross , counsel of record do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: January 9, 2015 _____    44542
Attorney-at-Law                   Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: January 9, 2015 _____    44542
Attorney-at-Law                   Attorney I.D.#

CIV. 609 (5/2012)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD HAAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                       Plaintiff,<br><br>     vs.<br><br>FIVE BELOW, INC., DAVID SCHLESSINGER, THOMAS G. VELLIOS, JOEL D. ANDERSON and KENNETH R. BULL,<br><br>                 Defendants. | Civ. Action No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><br><br><br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff Richard Haan ("plaintiff"), individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Five Below, Inc. ("Five Below" or the "Company"), as well as conference call transcripts and media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of all purchasers of the common stock of Five Below between June 5, 2014 and December 4, 2014, inclusive (the "Class Period"). Plaintiff seeks to pursue remedies against Five Below and certain of its most senior executives under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder.

2.     Defendant Five Below is a Philadelphia-based specialty discount retailer targeted at teens that prices all of its clothing and accessory offerings at $5 or below.

3.     The Company's private equity owners took it public in a $163.5 million initial public stock offering ("IPO") in 2012 and then caused it to undertake three additional registered follow-on stock offerings in 2013, in which the private equity owner and its two founders, then serving as the Company's Chief Executive Officer ("CEO") and Chairman of its Board of Directors, sold another $950 million of their personally held Five Below common stock.

4.     Having largely cashed out their holdings in Five Below, by the Spring of 2014 the two founders sought to step down from their involvement in the day-to-day management of the

Company. By the start of the Class Period on June 5, 2014, they had recruited a relatively inexperienced manager to assume the role of CEO, despite the fact that their new recruit had never before served as a CEO, much less the CEO of what was now a publicly traded company.

5.       While actively concealing from investors that the two founders both intended to step down from their roles as CEO and Chairman once their new hire got acclimated, Five Below raised its fiscal 2014 sales and earnings guidance twice, once at the start of the Class Period on June 5, 2014 and then again on September 10, 2014. With the price of Five Below common stock increasing on their misrepresentations about the Company's business metrics and financial prospects, reaching a Class Period high of nearly $48 in intraday trading, both of the Company's founders and its Chief Financial Officer ("CFO") cashed in, selling almost $30 million worth of their personally held shares at fraud-inflated prices.

6.       Meanwhile, in reality Five Below was struggling under its new management. Demand for the new 2014 Holiday merchandize line was soft, resulting in diminishing sales growth and forcing Five Below to resort to discounting to move inventory, further reducing its profit margins. Moreover, the increased costs of building a second distribution center were further cutting annual profits.

7.       Suddenly, at the end of the Class Period on December 4, 2014, Five Below finally disclosed that its sales growth had been dramatically diminished, forcing the Company to reduce its annual sales and profit forecasts. That same day, the two founders also announced their resignations as CEO and Chairman of Five Below – disclosing that the newly hired President was actually taking over as CEO. The market reacted negatively, driving the price of Five Below stock down 21% from its Class Period high on this news, and erasing more than $564 million in market capitalization.

## JURISDICTION AND VENUE

8.     Jurisdiction is conferred by §27 of the Exchange Act.  The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1337, and §27 of the Exchange Act.

9.     Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as the Company is headquartered in this District and the alleged misconduct was transacted in and emanated from this District.

10.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

11.     Plaintiff Richard Haan, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased Five Below common stock during the Class Period and has been damaged thereby.

12.     Defendant Five Below, based in Philadelphia, Pennsylvania, is a specialty discount retailer targeted at teens and pre-teens.  The Company's common stock was listed on the Nasdaq, an efficient market, throughout the Class Period, under the ticker symbol "FIVE." As of September 10, 2014, the Company had 54.3 million shares of common stock issued and outstanding.

13.     Defendant David Schlessinger ("Schlessinger") co-founded Five Below. Defendant Schlessinger is, and was throughout the Class Period, a director and the Chairman of

Five Below.  On December 4, 2014, defendant Schlessigner resigned the Chairmanship effective 11:59 p.m. on January 31, 2015.

14.     Defendant Thomas G. Vellios ("Vellios") co-founded Five Below.  Defendant Vellios is, and was throughout the Class Period, the CEO and a Director of Five Below, and until July 2014, the President of the Company.  On December 4, 2014, defendant Vellios resigned as CEO of Five Below effective January 31, 2015 and agreed to assume the Chairmanship effective February 1, 2015.

15.     Defendant Joel D. Anderson ("Anderson") is, and has been since July 2014, President and Chief Operating Officer ("COO") of Five Below.  On December 4, 2014, defendant Anderson was appointed CEO of Five Below effective February 1, 2015.

16.     Defendant Kenneth R. Bull ("Bull") is, and was throughout the Class Period, the CFO of Five Below.

17.     The defendants referenced above in ¶¶13-16 are referred to herein as the "Individual Defendants."  Five Below and the Individual Defendants are referred to herein, collectively, as "defendants."

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of the common stock of Five Below during the Class Period (the "Class").  Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

19.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Five Below common stock was actively traded on

the Nasdaq. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Five Below and/or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

20. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

21. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

22. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the Exchange Act was violated by defendants as alleged herein;

(b) whether statements made by defendants misrepresented material facts about the business, operations and management of Five Below; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

23. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## BACKGROUND

24.     Five Below, co-founded by defendants Schlessinger and Vellios in 2002, is a chain of discount stores aimed at teens and pre-teens that sells products priced at no more than $5. The first Five Below location opened on October 4, 2002. Five Below now has over 300 stores in 19 states and two distribution centers.

25.     In 2010, Five Below was purchased in a private equity leveraged buyout by Advent International Corporation ("Advent") and related entities. Between 2010 and July 2012, Five Below paid out almost $300 million in dividends to its private equity owners. On July 19, 2012, Advent took the Company public through an IPO. In the IPO, Five Below sold more than 4.8 million shares and certain "selling shareholders" sold another 4.8+ million shares at $17 each. The selling shareholders in the IPO included Advent, which sold 3.8+ million shares, and defendants Schelssinger and Vellios who, respectively, sold 258,595 and 256,435 shares each.

26.     On or about January 31, 2013, Five Below conducted a first follow-on stock offering in which certain "selling shareholders" sold another 11.3 million shares of Five Below stock at $35.65 per share, including Advent, which sold 9.3+ million shares, and defendants Schlessinger and Vellios who sold, respectively, 736,746 and 730,595 shares each.

27.     On or about June 26, 2013, Five Below conducted a second follow-on stock offering in which certain "selling shareholders" sold another 6 million shares of Five Below stock at $36 per share, including Advent, which sold 5+ million shares, and defendants Schlessinger and Vellios who sold, respectively, 461,477 and 458,629 shares each.

28.     On or about September 19, 2013, Five Below conducted a third follow-on stock offering in which certain "selling shareholders" sold another 7.1 million shares of Five Below

stock to underwriter Credit Suisse Securities (USA) LLC at $46.65 per share, and Credit Suisse then marketed those securities to the public.  Advent sold seven million of those shares and defendant Schlessinger sold another 100,000 shares.

29.     After negotiating with defendant Anderson since May 2014 *at the very earliest*, defendant Anderson was hired as Five Below's President and COO in early June 2014. Unbeknownst to investors at the time, who were only told that defendant Anderson was *supplementing the existing senior management team* of the newly public company, in reality, defendant Anderson had been hired to *replace* defendant Vellios as CEO.  Moreover, when defendant Vellios resigned as CEO, defendant Schlessinger too would also step down as the Chairman of the Board of Five Below.

30.     Defendants Schlessinger and Vellios sought to sell additional shares in 2014, but in order to conduct a fourth registered public stock offering, and to benefit from the accompanying marketing efforts of underwriters, compliance with the federal securities laws would have required Five Below to disclose in its registration statement that co-founder defendant Schlessinger was resigning as Chairman of the Board and co-founder defendant Vellios was resigning as CEO as soon as defendant Anderson could be brought up to speed to take over as CEO.[1]  This non-disclosure was particularly material in light of the fact that defendant Anderson had only before run Wal-Mart's web sales division and had never before

---

[1]    For example, compliance with Item 401(b) of Regulation S-K, 17 C.F.R. §229.401(b), would have required the "[i]dentification of [e]xecutive [o]fficers" in any registration statement, including their "term of office as officer," and would have required the description of "any arrangement or understanding between [any officer] and any other person(s) (naming such person) pursuant to which he was or is to be selected as an officer."  Any registration statement would need to disclose that the terms of defendants Schlessinger's and Vellios' respective offices as Chairman of the Board and CEO were coming to an end and that defendant Anderson was soon to be named CEO.

served as the CEO of a publicly traded company prior to being hired to replace Five Below's founder and CEO, defendant Vellios.

**DEFENDANTS' MATERIALLY FALSE AND
MISLEADING CLASS PERIOD STATEMENTS**

31.     The Class Period starts on June 5, 2014.  On the evening of June 4, 2014, after the close of trading, Five Below issued a press release reporting its first quarter 2014 financial results (for the period ended May 3, 2014) ***and raising its fiscal 2014 guidance***.  In addition to emphasizing that net sales had grown 32% year-over-year to $126 million and that net income as calculated pursuant to Generally Accepted Accounting Principles ("GAAP") had ***doubled*** from $1.6 million to $3.1 million, the release quoted defendant Vellios as stating in pertinent part as follows:

> "We are pleased with our first quarter sales performance as our ***compelling offering of high-quality, trend-right merchandise*** drove a solid customer response, particularly in the weeks leading up to Easter. In addition to our comparable store sales increase that came in ahead of our guidance, our new stores continue to demonstrate consistently strong performance across both new and existing markets. ***This sales performance resulted in the strong increase in earnings per share*** even as we continue to make the investments in talent, systems, and infrastructure that we believe are so critical to our future success."
>
> . . . "***With this solid start to fiscal 2014*** and our focus on maximizing the potential of our current business, while simultaneously placing equal emphasis on building a solid foundation for the future, ***we believe we are well-positioned to execute against the short and longer-term goals we have set for ourselves***."

32.     In the release, Five Below also increased its fiscal 2014 net sales guidance from a range of $672 million to $678 million to a "range of $675 million to $681 million" and increased its fiscal 2014 GAAP net income guidance from a range of $46.4 million to $48.0 million to a "range of $46.6 million to $48.2 million."

33.     During a conference call held with investors later that evening, defendants Vellios and Bull provided further positive statements concerning Five Below's purported then-present

- 8 -

business metrics and financial prospects.   During his opening remarks, defendant Vellios emphasized that the Company "*continued to invest in the many areas of the business … most important of all, talent*," and that the Company would "*continue to <u>add talent</u> at the leadership level including the <u>President position</u>*," for which he stated a search was then underway. Concerning guidance, defendant Bull stated in his opening remarks that Five Below then "expect[ed] relatively *flat gross and operating margins for the full year*" and emphasized that Five Below "*continued to make all of the critical investments in talent*."   In addition to concealing that they were on the cusp of hiring defendant Anderson to *replace* co-founder defendant Vellios as CEO, rather than to "add talent" to the newly public company's senior management team, defendants also concealed that the shakeup would result in co-founder defendant Schlessigner resigning as the Chairman of Five Below's Board of Directors.

34.     On June 12, 2014, the Company filed a Current Report on Form 8-K with the SEC reporting that on June 8, 2014, defendant Anderson had been appointed *President and COO* of Five Below effective in July 2014, stating that in this role he would "*lead all aspects of merchandising, stores and marketing*." The press release issued that day stated that defendant Anderson would "*report directly to Tom Vellios, Co-Founder and CEO of Five Below*," that Five Below had "been actively engaged in a search for the right candidate *to fill <u>the role of President</u>*," and that "*<u>adding</u>* the right talent in leadership positions ha[d] been a key priority." The release further emphasized that with defendant Anderson's hire, the Company had "*rounded out [its] executive team*."

35.     The market responded positively to this news and between the close of trading on June 5, 2014 and June 20, 2014, the price of Five Below common stock increased $5 per share, or 14%, and defendants Schlessinger, Vellios and Bull began cashing in, selling *more than $12*

*million* worth of their personally held Five Below stock at fraud-inflated prices between June 16, 2014 and August 18, 2014.

36.     On the evening of September 10, 2014, after the close of trading, Five Below issued a press release announcing its second quarter 2014 financial results (for the period ended August 2, 2014) *and again raising its fiscal 2014 guidance*. In addition to emphasizing that net sales had again grown *30.2%* year-over-year to $152.5 million and that GAAP net income had again *doubled* from $4.1 million to $8.3 million, the release quoted defendant Vellios as stating in pertinent part as follows:

> "We delivered a strong quarter of *30% sales growth* and a 37% increase in adjusted net income. *As importantly, we strengthened our leadership team* with the hiring of Joel Anderson as President . . . and signed a lease for our new northeast distribution facility in southern New Jersey, which is in close proximity to our existing location that it will replace."
>
> "As we head into the back half of the year and the important fourth quarter, we believe that we are well positioned from a merchandising, marketing and distribution standpoint. Our merchant and product development teams have done great work and *we believe that customers are going to really like what they see at Five Below stores this holiday season.*"

37.     In the release, Five Below also further increased its fiscal 2014 net sales guidance from a range of $675 million to $681 million to a "range of $681 million to $687 million" and further increased its fiscal 2014 GAAP net income guidance from a range of $46.6 million to $48.2 million to a "range of $47.2 million to $48.8 million."

38.     During a conference call held with investors later that evening, defendants Vellios, Anderson and Bull provided further positive statements concerning the Company's purported then-present business metrics and financial prospects. During his opening remarks, defendant Bull once again stated that Five Below "continue[d] to expect relatively flat gross and operating margins for the full-year." When questioned directly about what impact the hiring of defendant Anderson would have on Five Below's management structure, defendants again

maintained that defendant Anderson was merely an addition to the management team and concealed that defendant Vellios was then planning to resign as CEO and defendant Schlessinger was then planning to resign as Chairman of the Board, instead implying that both would remain at their present posts "for many years to come," with defendant Vellios stating in pertinent part as follows:

> If you look at Five Below, the growth that's ahead of us and we've done to date, ***clearly what we feel we did is strengthened the organization.***
>
> ***I think we added terrific talent to round out the team***.  We have still so much ahead of us, so much opportunity on the growth side, on the merchandising side, looking at our strategy, understanding what's next for Five Below both short and long-term. ***So I can assure you of one thing. There is plenty on the table for all of us to have a piece, as we move forward with this business***. *Not only for this year, next, but I think for many years to come*.

39.     The market again responded positively to this news and the price of Five Below common stock increased to above $43 per share on September 12, 2014, eventually reaching a Class Period high of nearly $48 per share in intraday trading on November 28, 2014, and permitting defendants Schlessinger, Vellios and Bull to continue cashing in by selling ***another $17.4 million*** worth of their Five Below stock at fraud-inflated prices between September 9, 2014 and November 25, 2014.

40.     The statements referenced above in ¶¶31-34 and 36-38 were each materially false and misleading as they failed to disclose and misrepresented the following adverse facts which were known to defendants or recklessly disregarded by them:

(a)     Rather than "adding talent," defendants knew that defendant Vellios was resigning as Five Below's CEO only to be replaced by defendant Anderson, who was relatively new to Five Below and totally untested in the role of CEO at a publicly traded company;

(b)     In addition to losing co-founder defendant Vellios as CEO, Five Below was losing co-founder defendant Schlessinger as Chairman;

(c)     With the Company's founders focused on cashing out their investment in Five Below and removing themselves from the Company's direct day-to-day executive oversight, Five Below's operations were struggling under the management of a less experienced management team;

(d)     The high costs of building a second Five Below distribution center in New Jersey were diminishing the Company's 2014 profit margins;

(e)     Rather than the "high-quality, trend-right merchandise" defendants claimed to be offering, soft demand for Five Below's 2014 Holiday offerings had been diminishing sales and requiring the new management team to discount merchandise to move inventory; and

(f)     As a result of the foregoing, the Company was not on track to achieve the financial results defendants stated the Company was on track to achieve during the Class Period.

41.     On December 4, 2014, after the close of trading, Five Below issued two press releases. In the first, the Company disclosed that compared to the *31.8%* sales growth reported for the first quarter of 2014 and the *30.2%* sales growth reported for the second quarter of 2014, Five Below's sales growth had significantly declined in the third quarter of 2014 to just *24.6%*. Five Below's forecast for its fourth quarter of 2014, which quarter was typically by far the Company's strongest, also called for a significant reduction in sales growth to *24%-25%*. Likewise, whereas Five Below's GAAP net income had roughly *doubled* each of the first three quarters of the year (from $1.6 million to $3.1 million in the first quarter of 2014, from $4.1 million to $8.3 million in second quarter of 2014, and from $1.7 million to $3.3 million in third quarter of 2014), Five Below's fourth quarter 2014 guidance now provided for only a limited GAAP net income growth of approximately *33%*. Five Below also *downgraded* the fiscal year

2014 guidance *that it had just increased on September 10, 2014*, such that rather than GAAP net income of $47.2 to $48.8 million on $681 to $687 million in net sales defendants stated the Company was on then on track to achieve, Five Below disclosed it was now only on track to achieve net income of $47.2 - $48.5 million on only $678 to $682 million in net sales.

     42.    In the second press release issued on the evening of December 4, 2014, Five Below shocked the market by disclosing for the first time that defendant Vellios had resigned as CEO of Five Below and defendant Schlessinger had resigned as Chairman of the Board. While defendants had concealed from investors throughout the Class Period their plans to replace co-founder Vellios as CEO with defendant Anderson, who was relatively new to Five Below – and totally unproven in the role of CEO at a publicly traded company – in a conference call held on December 4, 2014, defendants conceded to having knowledge of the plans for months, stating in pertinent part that the "succession plan" had "been something that [defendants Schlessinger and Vellios] together with the Board *ha[d] been working on for quite awhile now*," and that they had determined that defendant Anderson was "the right person to lead Five Below . . . *when [they] recruited him*."

     43.    On this news, the price of Five Below common stock, which had traded at nearly $48 per share in intraday trading during the Class Period (on November 28, 2014), plummeted *21%* from that level to close at $37.61 on December 5, 2014, on unusual trading volume of more than 9.8 million shares, *erasing more than $564 million in market capitalization from the stock's Class Period high*.

     44.    As emphasized by *The Wall Street Journal* in its report that night entitled "Teen Retailer Five Below Names New CEO – Shares Fall As Company's Sales Forecast for Holiday Quarter Disappoints," defendant "Anderson joined Five Below in July after leaving Wal-Mart

Stores Inc. *as head of the retailer's website*" and "now replaces *CEO and co-founder* Tom Vellios."  And as a Wells Fargo stock analyst stated in his client note that day, the lack of a salary increase for defendant Anderson upon his promotion to CEO demonstrates he was hired in June 2014 to assume that position.  The Wells Fargo analyst also lamented that he was "a little unsettled by the speedy private equity exit, transition of co-founders to the board, and frequent inside selling given the potential growth ahead."  As noted by *24/7 Wallstreet* on December 5, 2014, Five Below's "[s]hares were hit fairly hard on guidance, *but also on news that there is already a CEO transition*."

45.     The market for Five Below common stock was open, well-developed and efficient at all relevant times.  As a result of the materially false and misleading statements and omissions set forth above, Five Below common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Five Below common stock relying upon the integrity of the market price of Five Below common stock and market information relating to Five Below, and have been damaged thereby.

46.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Five Below common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

47.     At all relevant times, the material misrepresentations and omissions particularized in this complaint directly or proximately caused, or were a substantial contributing cause, of the damages sustained by plaintiff and other members of the Class.  As described herein, during the

Class Period, defendants made or caused to be made a series of materially false or misleading statements about Five Below's business, prospects, and operations.   These material misstatements and omissions had the cause and effect of creating, in the market, an unrealistically positive assessment of Five Below and its business, prospects, and operations, thus causing the Company's stock to be overvalued and its stock price artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing Five Below common stock at artificially inflated prices, thus causing the damages complained of herein.  When the true facts about the Company were revealed to the market, the inflation in the price of Five Below common stock was removed and the price of Five Below common stock declined dramatically, causing losses to plaintiff and the other members of the Class.

## ADDITIONAL SCIENTER ALLEGATIONS

48.     As alleged herein, Five Below and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, these defendants, by virtue of their receipt of information reflecting the true facts regarding Five Below, their control over, and/or receipt and/or modification of Five Below's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Five Below, participated in the fraudulent scheme alleged herein.

49.     During the Class Period, defendants Schlessinger and Vellios, who had never before sold shares in the open market, along with defendant Bull, collectively sold 733,000 shares into the open market at fraud-inflated prices receiving more than $29.5 million in gross proceeds as fully set forth below:

| DATE | DEFENDANT | NO. SHARES SOLD | PRICE | GROSS PROCEEDS |
|---|---|---|---|---|
| 2014-06-16 | Vellios | 100,000 | $36.60 | $3,659,999 |
| 2014-06-19 | Bull | 24,200 | $40.02 | $968,484 |
| 2014-06-20 | Bull | 800 | 40.06 | $32,048 |
| 2014-07-08 | Schlessinger | 100,000 | $37.24 | $3,724,000 |
| 2014-08-18 | Vellios | 100,000 | $37.83 | $3,783,000 |
| 2014-09-09 | Schlessinger | 21,100 | $42.26 | $891,685 |
| 2014-09-10 | Schlessinger | 78,900 | $42.32 | $3,339,048 |
| 2014-10-14 | Vellios | 8,931 | $43.25 | $386,265 |
| 2014-10-20 | Vellios | 91,069 | $39.68 | $3,613,617 |
| 2014-11-21 | Schlessinger | 88,870 | $45.27 | $3,660,984 |
| 2014-11-24 | Schlessinger | 19,130 | $45.77 | $875,580 |
| 2014-11-24 | Vellios | 11,788 | $46.27 | $545,430 |
| 2014-11-25 | Vellios | 88,212 | $46.31 | $4,085,097 |
| | | ***733,000*** | | ***$29,565,237*** |

## NO SAFE HARBOR

50.     The "Safe Harbor" warnings accompanying Five Below's reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.  To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with GAAP, including those filed with the SEC on Form 8-K, they are excluded from the protection of the statutory Safe Harbor.  *See* 15 U.S.C. §78u-5(b)(2)(A).

51.     Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Five Below who knew that the FLS was false.  None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## APPLICATION OF PRESUMPTION OF RELIANCE:
## FRAUD ON THE MARKET

52.     Plaintiff will rely upon the presumption of reliance established by the fraud on the market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     The omissions and misrepresentations were material;

(c)     The Company's common stock traded in an efficient market;

(d)     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

(e)     Plaintiff and other members of the Class purchased Five Below common stock between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

53.     At all relevant times, the market for Five Below common stock was efficient for the following reasons, among others:

- 17 -

      (a)    As a regulated issuer, Five Below filed periodic public reports with the SEC; and

      (b)    Five Below regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## LOSS CAUSATION/ECONOMIC LOSS

54.    During the Class Period, as detailed herein, defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Five Below common stock and operated as a fraud or deceit on Class Period purchasers of Five Below common stock by misrepresenting the value of the Company's business and prospects.  As defendants' misrepresentations and fraudulent conduct became apparent to the market, the price of Five Below common stock fell precipitously, as the prior artificial inflation came out of the price.  As a result of their purchases of Five Below common stock during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## COUNT I

### For Violations of §10(b) of the Exchange Act and Rule 10b-5
### Against all Defendants

55.    Plaintiff incorporates ¶¶1-54 by reference.

56.    During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

57.     Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Five Below common stock during the Class Period.

58.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Five Below common stock.  Plaintiff and the Class would not have purchased Five Below common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### For Violations of §20(a) of the Exchange Act
### Against All Defendants

59.     Plaintiff incorporates ¶¶1-58 by reference.

60.     The Individual Defendants acted as controlling persons of Five Below within the meaning of §20(a) of the Exchange Act.  By reason of their positions with the Company, and their ownership of Five Below common stock, the Individual Defendants had the power and authority to cause Five Below to engage in the wrongful conduct complained of herein.  Five Below controlled the Individual Defendants and all of its employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Awarding such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  January 15, 2015                    LAW OFFICES BERNARD M. GROSS, P.C.


DEBORAH R. GROSS

The  Wanamaker Building (#44542)
100 Penn Square East, Suite 450,
Philadelphia, PA 19107
Telephone:  215/561-3600
215/561-3000 (fax)
debbie@bernardmgross.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
MARY K. BLASY
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mblasy@rgrdlaw.com

JOHNSON & WEAVER, LLP
FRANK J. JOHNSON
110 West "A" Street, Suite 750
San Diego, CA  92101
Telephone:  619/230-0063
619/255-1856 (fax)
frankj@johnsonandweaver.com

JOHNSON & WEAVER, LLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, Georgia 30064
Telephone:  770-200-3104
770/200-3101 (fax)
michaelf@johnsonandweaver.com


Attorneys for Plaintiff

I:\Admin\CptDraft\Securities\Cpt Five Below.docx

- 21 -

DocuSign Envelope ID: A1FB1F48-DB28-43D5-9DA3-E74931D9B801

## CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I, Richard Haan, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.    I have reviewed the complaint and authorize its filing.

2.    I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3.    I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4.    I made the following transactions during the Class Period in the securities that are the subject of this action.

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 11/20/14 | 35 | $44.02 |
| 11/21/14 | 29 | $45.49 |
| 11/24/14 | 27 | $45.82 |
|  |  |  |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
|  |  |  |
|  |  |  |

5.    I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

DocuSign Envelope ID: A1FB1F48-DB28-43D5-9DA3-E74931D9B801

6.      I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day of December, 2014.

DocuSigned by:

Richard Haan